1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**FILED**

**OCT - 3 2019**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| IN THE MATTER OF: | Case No. 8:19-bk-12480-TA<br>Adv. No. _____ |
| **GUY S. GRIFFITHE,** | Chapter 7 |
| DEBTOR, | COMPLAINT OF<br>NONDISCHARGEABILITY AND |
| v. | EXCEPTION FROM DISCHARGE OF<br>DEBTS |
| **STEVEN BAGOT,** | (ADVERSARY COMPLAINT) |
| MOVANT. | |

Movant Steven Bagot (Mr. Bagot), through his undersigned attorneys, respectfully

submits the following Complaint of non dischargeability and exception from discharge of certain

debts, hereby objecting to the entry of discharge in the above-entitled bankruptcy case pursuant to

11 U.S. Code § 727 and Rule 4004 of the Federal Rules of Bankruptcy Procedure, and alleges as

follows:

HEIDI URNESS LAW, PLLC

1

2

## I.  **INTRODUCTION**

1.    This is an action to object to entry of discharge in the Chapter 7 Bankruptcy case of

Debtor and Defendant Guy S. Griffithe, Case No. 8:19-bk-12480-TA, pending in the U.S.

Bankrupcy Court of the Central District of California, Santa Ana division.

2.    The Defendant-Debtor is not entitled to receive a discharge of debt and/or the debt is

exempted from discharge in his bankruptcy case pursuant to 11 U.S. Code § 727(a)(2), (3), (4),

(5), (6), (7), and (12) and to 11 U.S. Code § 523(a)(2), (4), and (6).

## II.    **JURISDICTION**

3.    This Court has jurisdiction over this adversary proceeding pursuant to 11 U.S. Code

§ 727.

## III.    **VENUE**

4.    Venue is proper pursuant to 28 U.S.C. § 1409.

## IV.    **PARTIES**

5.    Plaintiff and Movant Mr. Steven Bagot is an individual who resides in Contra Costa

County, California. Mr. Bagot provided no less than $650,000.00 (six hundred fifty thousand

dollars) to the Defendant-Debtor.

6.    Defendant-Debtor Guy S. Griffithe is an individual who, on information and belief,

resides in California. Defendant-Debtor, at all times pertinent hereto, owed a fiduciary duty to

Mr. Bagot, among others, who "invested" in his Companies. Defendant-Debtor made fraudulent

statements as well as published and was a signatory to fraudulent documents underlying the non-

bankruptcy litigation in Skagit County Superior Court Case No. 18-2-00544-29 and King County

Superior Court Case No. 19-2-00772-9 SEA. When Plaintiff sued to recover his damages for

1   Defendant-Debtor's wrongful conduct, the Defendant-Debtor continued his wrongful course of

2   conduct with the intent to hinder, delay, and/or further defraud Mr. Bagot, including filing the

3   relevant bankruptcy action as well as concealing, destroying, transferring, falsifying, or failing to

4   keep or preserve property, funds, and recorded information, among other wrongs as set forth

5   herein.

6                              V.      **FACTUAL ALLEGATIONS**

7       **A. The Defendant-Debtor's Instant Bankruptcy Case.**

8   7.      On June 26, 2019 ("petition date"), Defendant-Debtor filed a voluntary petition for relief

9   under Chapter 7 of Title 11 of the United States Code, thereby initiating bankruptcy case number

10  8:19-bk-12480-TA, in the U.S. Bankruptcy Court of the Central District of California, Santa Ana

11  Division.

12  8.      Based upon the Defendant-Debtor's conduct and nature of the debts he seeks to discharge,

13  Mr. Bagot now brings the instant adversary complaint to object to the entry of discharge in

14  Defendant-Debtor's bankruptcy case pursuant to 11 U.S. Code § 727(a)(2), (3), (4), (5), (6), (7),

15  and (12), and to 11 U.S. Code § 523(a)(2), (4), and (6).

16      **B. Defendant-Debtor's Debt to Plaintiff: The <u>First</u> Fraud Litigation.**

17  9.      On or about April 25, 2018, Mr. Bagot filed Skagit County Superior Court Case No. 18-2-

18  00544-29 alleging causes of action against Defendant-Debtor for fraud, negligent

19  misrepresentation, civil conspiracy, breach of fiduciary duties, conversion, breach of contract,

20  unjust enrichment, promissory estoppel, violations of Washington's Limited Liability Company

21  Act Records Disclosure Requirements.

22

23

10.     On July 23, 2018, Defendant-Debtor signed a Settlement Agreement on behalf of himself,

personally, and on behalf of Renewable Technologies Solutions and Green Acres Pharms, LLC,

as well as a personal Confession of Judgment.

**C. Defendant-Debtor's Debt to Plaintiff: The Second Fraud Litigation.**

11.     On January 9, 2019, Mr. Bagot filed King County Superior Court Case No. 19-2-00772-9

SEA alleging causes of action against Defendant-Debtor for fraud, negligent misrepresentation,

civil conspiracy, breach of contract, unjust enrichment, conversion, promissory estoppel, breach

of the fiduciary duties, breach of the duties of good faith and fair dealing, violations of

Washington's LLC disclosure requirements and violations of securities laws.

**i.     Plaintiff's Initial "Purchase of Interest"**

12.     On or about March 31, 2017, Defendant-Debtor fraudulently induced Plaintiff Mr. Bagot

to enter into a contract titled "Subscription Agreement" with the Defendant-Debtor in exchange

for what Defendant-Debtor purported to be a 4% (four percent) interest in the Defendant

Companies named in King County Superior Court Case No. 19-2-00772-9 in exchange for

$450,000.00 (four hundred fifty thousand dollars).

13.     The Defendant-Debtor knowingly used false pretenses, false representations, or actual

fraud, as well as published statements in writing that were materially false regarding his and his

companies' financial conditions, in addition to the membership and ownership, and related

relationships, of himself and the companies, and more, in soliciting the funds from Mr. Bagot,

and others.

14.     The terms of this Subscription Agreement state: "Renewable Technologies Solution Inc.

[…] agrees to sell a 4% interest in the corporation for $450,000 (four hundred and fifty thousand

1    dollars US currency). [...] Distributions [...] will be calculated as 4% of the 100% Net Revenue

2    accrued by SMRB. Distributions will be disbursed to RTSI and distributed to [Plaintiff]."

3    15.     Near the end of 2017, Defendant-Debtor, purportedly on behalf of SMRB d.b.a. Green

4    Acres Pharms, issued what he called a "distribution" of profits to all shareholders. Mr. Bagot

5    purportedly received approximately $10,000.00.

6    16.     Since this single "distribution," Defendant-Debtor has failed to make any disbursements

7    or to provide accounting personally or for the Defendant Companies.

8    17.     Throughout this time, despite the various applicable laws as well as his duties to Mr.

9    Bagot and other "investors," and without justification, Defendant-Debtor concealed, destroyed,

10    mutilated, falsified, or failed to keep or preserve any recorded information from which his

11    financial condition or business transactions might be ascertained.

12        **ii.**     **Plaintiff's Subsequent "Purchase of Interest"/Loan**

13    18.     On or about November 27, 2017 Mr. Bagot and Defendant-Debtor, representing himself

14    as "Princip[al]" (sic.) and "Partner" of Green Acres Pharm (as well as "Renewable Technologies

15    Solution, Inc, Green Acres Pharm, SMRB"), executed a Letter of Understanding memorializing

16    their discussions regarding Mr. Bagot's potential additional investment of $200,000.00 (two

17    hundred thousand dollars).

18    19.     The Defendant-Debtor knowingly used false pretenses, false representations, or actual

19    fraud, as well as published statements in writing that were materially false regarding his and his

20    companies' financial conditions, in addition to the membership and ownership, and related

21    relationships, of himself and the companies, and more, in soliciting the funds from Mr. Bagot,

22    and others.

23

HEIDI URNESS LAW, PLLC

20.     On or about November 29, 2017, Plaintiff Mr. Bagot transferred an additional $200,000.00 (two hundred thousand dollars) to Defendant-Debtor in exchange for what Defendant-Debtor purported to be an additional 6% (six percent) interest in the Defendant Companies.

21.     As explained in the Subscription Agreement, Letter of Understanding, and understood and agreed by the parties, this additional $200,000.00 (two hundred thousand dollar) investment entitles Plaintiff to a percentage "of the net income or sale of the business of Green Acres Pharm and SMRB, to be paid quarterly" and, among other things, "a professional accounting each quarter by a qualified Certified Public Account[ant]." (sic.)

22.     Defendant-Debtor has failed to make any disbursements or provide accounting required by the parties' Letter of Understanding or second Subscription Agreement.

23.     The Letter of Understanding explains the parties' agreement that the $200,000.00 (two hundred thousand dollars) paid by Plaintiff to Defendant-Debtor was to be used to purchase, or complete the production of, an oil processing machine to be utilized by Green Acres Pharms in processing product purchased from Emerald City Cultivation.

24.     Should the funds not have been used for this purpose, the $200,000.00 was to be recharacterized as a loan, becoming due and payable within two weeks of issuance, not used for any other purpose, and returned to Plaintiff.

25.     The funds were not used for this purpose.

26.     In fact, the Defendant-Debtor apparently solicited funds from several investors on this basis, making repeated fraudulent representations regarding the funds, the use the funds would be put to, the entity which would use the funds, etc. to multiple parties.

HEIDI URNESS LAW, PLLC

27.     Further, in the non-bankruptcy litigation, Defendant-Debtor Griffithe falsely represented that Mr. Bagot drafted the above-described documents. In reality, Defendant-Debtor solicited multiple "investors" to buy in pursuant to the same scheme and with the document – which Defendant-Debtor (or his agents) drafted and proposed to the "investors" in each instance.

28.     Plaintiff issued a demand for the return of these funds. Defendant-Debtor has failed to repay any monies owed under this subsequent agreement to the initial investment.

29.     Throughout this time, despite the various applicable laws as well as his duties to Mr. Bagot and other "investors," and without justification, Defendant-Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.

### iii.     Subsequent Events

30.     After Plaintiff failed to obtain repayment for the $200,000.00 provided Defendant-Debtor in November 2017, failed to obtain repayment under the Letter of Understanding - or any other penalties, costs, expenses, and expenditures owed - and failed to obtain regular quarterly disbursements (or *any* disbursements), an accounting, or even a responsive communication, Mr. Bagot retained counsel.

31.     Following several discussions with several different attorneys in several different states, all purporting to represent Defendant-Debtor individually and with respect to his role in the Defendant Companies, Defendant-Debtor's then-counsel sent Plaintiff a written "Rescission and Repurchase Offer" purporting to repay the loans and/or buy out Plaintiff's relevant interests (acquired through the Subscription Agreements and Plaintiff's payment of $650,000.00, total, to Defendants).

32.    Following extensive negotiations with a different attorney purporting to have the authority to negotiate the "Rescission and Repurchase" Agreement, the parties agreed upon the terms of the payment amount and date.

33.    Plaintiff drafted a proposed Settlement Agreement and sent it the same counsel who, in the weeks prior, purported to negotiate the final terms of the "Rescission and Repurchase Agreement" with Plaintiff on or about November 27, 2018. The document was never signed by Defendant-Debtor, and Defendant-Debtor eventually ceased responding altogether.

34.    Defendant-Debtor offered and negotiated several of these agreements with multiple investors in an attempt to delay their seeking relief for his fraud. None were ever consummated.

35.    Defendant-Debtor failed, and apparently continues to refuse, to respond altogether, requiring Plaintiff to file an action in King County Superior Court in Washington State in order to recover and protect his funds which Defendant-Debtor purported were invested in the Defendant Companies, and in order to recover all costs, expenses, and expenditures incurred by Mr. Bagot as well as damages for Defendant-Debtor's fraudulent and otherwise tortious conduct.

36.    Throughout this time, despite the various applicable laws as well as his duties to Mr. Bagot and other "investors," and without justification, Defendant-Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.

37.    The Defendant has engaged in this wrongful conduct with the intent to hinder, delay, or defraud Mr. Bagot, and other creditors.

HEIDI URNESS LAW, PLLC

**D. The Defendant-Debtor's Continued Fraudulent Statements and Transfers, Concealment, and Other Wrongs After the Commencement of the King County Superior Court Litigation.**

38.     In March of 2019, Mr. Bagot served Interrogatories and Requests for Production on Defendant-Debtor in King County Superior Court Case No. 19-2-00772-9 SEA.

39.     Defendant-Debtor refused, on a ground other than the properly invoked privilege against self-incrimination, to respond to these discovery requests.

40.     After engaging in a fruitless CR 26 conference, Plaintiff then filed a Motion to Compel Defendant-Debtor's response, production, and compliance.

41.     On June 14, 2019, in the King County Superior Court litigation, the Honorable Judge McHale entered an Order ordering Defendant-Debtor provide complete responses and documents in response to Mr. Bagot's discovery requests.

42.     Defendant-Debtor has refused to provide those responses.

43.     Instead, Defendant-Debtor filed this bankruptcy action with the intent to hinder, delay, and/or further defraud Mr. Bagot.

44.     As a result of this fraudulent conduct, concealment, and transfers, certain monies are not available for distribution to creditors, including Mr. Bagot.

**E. The WSLCB Investigation.**

45.     The Defendant-Debtor has refused to respond to the discovery requests and further failed to obey the Court's Order granting Mr. Bagot's Motion to Compel and now attempts to utilize this bankruptcy proceeding in an effort to further hinder, delay, and/or defraud Mr. Bagot.

46.     The Washington State Liquor and Cannabis Board conducted its own investigation of Defendant-Debtor and obtained evidence of multiple, additional, and egregious instances of fraudulent conduct, concealment, and transfers, among other wrongs.

HEIDI URNESS LAW, PLLC

1    47.    The result of that initial investigation is attached as Exhibit A to this Complaint.

2    48.    Exhibit A alleges, and provides additional evidence that, the Defendant-Debtor has:

3        a.    transferred, removed, or destroyed his property and funds within one year before

4            the date of the filing of the instant bankruptcy petition;

5        b.    concealed or mutilated his property and funds within one year before the date of

6            the filing of the instant bankruptcy petition;

7        c.    concealed, destroyed, mutilated, falsified, or failed to keep or preserve any

8            recorded information, including books, documents, records, and papers, from

9            which the debtor's financial condition or business transactions might be

10            ascertained;

11        d.    fraudulently made false accounts, presented or used false claims, or attempted to

12            obtain money, property, or an advantage for acting or forbearing to act;

13        e.    failed to explain any loss of assets or deficiency of assets to meet his liabilities;

14        f.    obtained money, property, or services by false pretenses, false representations, or

15            actual fraud;

16        g.    obtained money, property, or services by use of a statement in writing that is

17            materially false regarding his financial condition on which creditors relied and

18            which he made or published with the intent to deceive; and

19        h.    engaged in fraud or defalcation while acting in a fiduciary capacity,

20            embezzlement, or larceny.

21    49.    Mr. Bagot incorporates by reference the facts and allegations set forth in Exhibit A in this

22    Complaint.

23

ADVERSARY COMPLAINT
OBJECTING TO ENTRY OF DISCHARGE - 10

HEIDI URNESS LAW, PLLC

## VI.    FIRST CAUSE OF ACTION:
### Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(2)

50.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

51.    Within one year before the petition date, Defendant-Debtor transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, the Defendant-Debtor's property and funds.

52.    As of the dates of the transfers, removals, destructions, mutilations, or concealments of the funds and property, Defendant had one or more unsecured creditors, including Mr. Bagot.

53.    The transfer or removal of Defendant-Debtor's property prevented the distribution of Defendant-Debtor's property to Defendant-Debtor's unsecured creditors.

54.    Defendant, with an intent to hinder, delay, or defraud at least one of his creditors, transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, Defendant-Debtor's property.

55.    By transferring, removing, destroying, mutilating, or concealing, or permitting transfer, removal, destruction, mutilation, or concealment of, Defendant-Debtor's property and funds with the intent to hinder, delay, or defraud at least one of his creditors, Defendant-Debtor violated 11 U.S.C. § 727(a)(2)(A).

## VII.    SECOND CAUSE OF ACTION:
### Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(3)

56.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

HEIDI URNESS LAW, PLLC

1    57.    Defendant-Debtor has, and without justification, concealed, destroyed, mutilated,

2    falsified, or failed to keep or preserve information from which Defendant-Debtor's financial

3    condition or business transactions might be ascertained.

4    58.    By concealing, destroying, mutilating, falsifying, or failing to keep or preserve the

5    information from which Defendant-Debtor's financial condition or business transactions might be

6    ascertained, and without justification, Defendant-Debtor has violated 11 U.S.C. § 727(a)(3).

7                    VIII.    **THIRD CAUSE OF ACTION:**
                **Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(4)**
8
      59.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though
9
      fully set forth herein.
10
      60.    Defendant-Debtor knowingly and fraudulently in, or in connection with, the case made a
11
      false oath or account, presented or used a false claim, and/or gave, offered, received, or attempted
12
      to obtain money, property, or advantage, or a promise of money, property, or advantage, for
13
      acting or forbearing to act.
14
      61.    By making such knowing and false oath or account, presenting or using the false claim,
15
      and/or giving, offering, receiving, or attempting to obtain money, property, or advantage, or a
16
      promise of the same, Defendant-Debtor violated 11 U.S.C. § 727(a)(4)(A)-(C).
17
                    IX.    **FOURTH CAUSE OF ACTION:**
18              **Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(5)**

19    62.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though

20    fully set forth herein.

21    63.    Defendant-Debtor has failed to explain satisfactorily any loss of assets or deficiency of

22    assets to meet his liabilities.

23

ADVERSARY COMPLAINT
OBJECTING TO ENTRY OF DISCHARGE - 12                    HEIDI URNESS LAW, PLLC

64.    By failing to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities, Defendant-Debtor violated 11 U.S.C. § 727(a)(5).

### X.    FIFTH CAUSE OF ACTION:
**Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(6)**

65.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

66.    Prior to and following Judge McHale's entry of the Order Granting Mr. Bagot's Motion to Compel Information and Documents from Defendant-Debtor, Defendant-Debtor refused to respond to a material question propounded by Mr. Bagot in the non-bankrupcy litigation on a ground other than the properly invoked privilege against self-incrimination.

67.    Following Judge McHale's entry of the Order Granting Mr. Bagot's Motion to Compel Information and Documents from Defendant-Debtor, Defendant-Debtor refused to provide to Mr. Bagot (or his attorney) the documents required by the Court's order.

68.    By refusing to obey this lawful order of the Court, the Defendant-Debtor has violated 11 U.S.C. § 727(a)(6)(A) and (C).

### XI.    SIXTH CAUSE OF ACTION:
**Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(7)**

69.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

70.    Defendant-Debtor committed the acts specified in the causes of action above, among others, within one year before the filing of his petition on June 26, 2019.

71.    Defendant-Debtor committed the acts specified in the causes of action above, among others, during the case, or in connection with another related case, including Mr. Bagot's non-bankruptcy litigation.

HEIDI URNESS LAW, PLLC

72.    By committed the acts specified in the causes of action above within the time periods

indicated above, the Defendant-Debtor has violated 11 U.S.C. § 727(a)(7).

## XII.    SEVENTH CAUSE OF ACTION:
### Nondischargeability of Debt Pursuant to 11 U.S. Code § 727(a)(12)

73.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though

fully set forth herein.

74.    There is reasonable cause to believe that section 522(q)(1) may be applicable to the

Defendant-Debtor.

75.    There is a pending proceeding in which the Defendant-Debtor may be found liable for a

debt of the kind described in section 522(q)(1)(B), incluing Mr. Bagot's non-bankruptcy

litigation.

76.    Because there is reasonable cause to believe that section 522(q)(1) may be applicable to

the Defendant-Debtor, and there is a pending proceeding in which the Defendant-Debtor may be

found liable for a debt of the kind described in that same section, the debt cannot be discharged

pursuant to 11 U.S. Code § 727(a)(12).

## XIII.    EIGHTH CAUSE OF ACTION:
### Exception to Dischargeability of Debt Pursuant to 11 U.S. Code § 523(a)(2)

77.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though

fully set forth herein.

78.    Defendant-Debtor owes a debt to Mr. Bagot, and others, for money, property, services

which he obtained by false pretenses, a false representation, or actual fraud, which was not a

statement respecting the debtor's or an insider's financial condition.

79.    Defendant-Debtor owes a debt to Mr. Bagot, and others, for money, property, services

which he obtained by use of a statement in writing that is materially false respecting the

1  Defendant-Debtor's or an insider's financial condition on which Mr. Bagot, and others,

2  reasonably relied and which Defendant-Debtor caused to be made or published with the intent to

3  deceive.

4  80.    By engaging in the above-described conduct, the debt owed by Defendant-Debtor is

5  excepted from discharge under 11 U.S. Code § 523(a)(2).

6  **XIV.    NINTH CAUSE OF ACTION:**<br>**Exception to Dischargeability of Debt Pursuant to 11 U.S. Code § 523(a)(4)**

7

8  81.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though

   fully set forth herein.

9

10 82.    As described herein, Defendant-Debtor engaged in fraud or defalcation while acting in a

   fiduciary capacity, embezzlement, or larceny.

11

12 83.    By engaging in the above-described conduct, the debt owed by Defendant-Debtor is

   excepted from discharge under 11 U.S. Code § 523(a)(4).

13

14 **XV.    TENTH CAUSE OF ACTION:**<br>**Exception to Dischargeability of Debt Pursuant to 11 U.S. Code § 523(a)(6)**

15 84.    Mr. Bagot realleges and incorporates by reference the foregoing allegations as though

16 fully set forth herein.

17 85.    As described herein, Defendant-Debtor committed willful and malicious injury to another

18 entity or to the property of another entity, including Mr. Bagot and others.

19 86.    By engaging in the above-described conduct, the debt owed by Defendant-Debtor is

20 excepted from discharge under 11 U.S. Code § 523(a)(6).

21 **XVI.    PRAYER FOR RELIEF**

22 WHEREFORE, Mr. Bagot prays for judgment against Defendant-Debtor Griffithe as follows:

23 1.    That this Court determine that the debts of Defendant are nondischargeable because:

1  A. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(2);

2  B. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(3);

3  C. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(4);

4  D. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(5).

5  E. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(6);

6  F. Defendant-Debtor committed the acts specified in 11 U.S.C. § 727(a)(7);

7  G. There is reasonable cause to believe that section 522(q)(1) may be applicable to the

8  Defendant-Debtor, or there is pending a proceeding in which the Defendant-Debtor may be found

9  liable for a debt of the kind described in section 522(q)(1) so that the debt cannot be discharged

10  pursuant to 11 U.S. Code § 727(a)(12).

11  2.    That the debt owed by Defendant-Debtor is excepted from discharge:

12  A. Under 11 U.S. Code § 523(a)(2);

13  B. Under 11 U.S. Code § 523(a)(4);

14  C. Under 11 U.S. Code § 523(a)(6);

15  3.    For an order requiring Defendant-Debtor to pay Mr. Bagot's reasonable costs and

16  expenses, including Attorney's Fees as may be permitted by law, equity, contract between the

17  parties, or rule; and

18  4.    For such other and further relief as the Court deems just and equitable.

19

20

21

22

23  //

ADVERSARY COMPLAINT
OBJECTING TO ENTRY OF DISCHARGE - 16                    HEIDI URNESS LAW, PLLC

Submitted and dated this 1st day of October, 2019.


_____

Heidi Urness, WSBA No. 53165
Heidi Urness Law, PLLC
725 East Denny Way
Seattle, Washington 98122
heidiurnesslaw@gmail.com
Telephone: 415.238.4161

ADVERSARY COMPLAINT
OBJECTING TO ENTRY OF DISCHARGE - 17

HEIDI URNESS LAW, PLLC

# EXHIBIT  A

# ENFORCEMENT REPORT OF COMPLAINT

 **Washington State**
# Liquor and Cannabis Board

| Date of Complaint | 6/27/2018 | Complaint Number | C8D8178A |
|---|---|---|---|
| Assigned To | 8D - Wilcox, Gary M | Complaint Taken By | E-mail |

| PREMISES INVOLVED | Licensee | | License No | 413099 |
|---|---|---|---|---|
| | Trade Name | GREEN ACRE PHARMS | Phone No | 2067144983 |
| | Address | 9642 PADILLA HEIGHTS RD #103-106 ANACORTES WA 982218604 | Lic. Class | MARIJUANA PRODUCER TIER 2 ; MARIJUANA PROCESSOR ; MARIJUANA PRODUCER TIER 2 ; MARIJUANA PRODUCER TIER 2 ; MARIJUANA PROCESSOR ; MARIJUANA PROCESSOR ; MARIJUANA PROCESSOR ; MARIJUANA PRODUCER TIER 2 |

| COMPLAINANT | Name | Turner, Dan |
|---|---|---|
| | Phone No | ( )  - |
| | Release of Name Authorized | Yes |

| NATURE OF COMPLAINT | Complaint Status | Closed Substantiated |
|---|---|---|
| | Date/Time of Alleged Violation | Wednesday 06/27/2018 14:26 |
| | Alleged Violation: 314.55.035 True Party of Interest Violation | |

| Person Involved | Sex | Race | Age | Hgt | Wgt | Hair | Eyes | Involved How |
|---|---|---|---|---|---|---|---|---|
| Wilcox, Gary M | | | | | | | | Other |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## OFFICER'S SUMMARY/FOLLOW-UP INVESTIGATION
**Officers have 60 days from receipt of complaint to investigate and report results to the Lieutenant**
To add additional boxes, put your cursor outside the boxed frame anywhere to the right below and hit the enter button. A new box will appear.

| Date | Notes |
|---|---|
| Friday 07/06/2018 09:08 | 7/6/18 - Turner discussed investigation with Wilcox. |
| Wednesday 09/05/2018 11:52 | Attempt to call R/P at 626-278-8218. No answer, message left |
| Tuesday 09/11/2018 07:00 | Turner sent Wilcox emails regarding investigation. dt |
| Friday 11/09/2018 10:45 | Contact Green Acre Pharms licensee Sonja Russell and deliver authorization to inspect form. |
| Friday 04/05/2019 07:00 | On 4/9/2019 AT 11:49am, Officer Caine Hilario and I, Officer Gary Wilcox, issued AVN's as a result of a complaint investigation - WAC 314-55-035(1) True party of interest. This investigation revealed additional violations of WAC 314-55.035(5) (True party of interest un-vetted funds), WAC 314.55.050 (2) (Failure or refusal to provide requested documents), WAC 314-55-050(3) (Misrepresentation of facts). All violation could result in cancellation of license. This complaint investigation can be closed - substantiated. |

\

## WSLCB NARRATIVE / EVIDENCE REPORT

| Washington State Liquor and Cannabis Board | TYPE OF REPORT (Select all that apply)<br>☐ CITATION / NOI  ☒ OTHER: Complaint Investigation<br>☒ AVN           ☐ OBSERVED ☐ REFERRED | INCIDENT/CASE NUMBER<br>C8D817A<br>Report #1 |
|---|---|---|
| ADDITIONAL ATTACHMENTS:<br>☐ PHOTOGRAPH(S)        ☐STATEMENT(S) | | ☒ LICENSEE NOTIFIED: NAME: Sonja RUSSELL |

**EVIDENCE / ATTACHMENTS** (TYPE OF ACTION: 1. SEIZED EVIDENCE  2. PHOTGRAPHED  3. STATEMENTS 4. DESTROYED)

| ITEM # | DESCRIPTION | QUANTITY | STORAGE LOCATION | ACTION # |
|---|---|---|---|---|
| ITEM # | DESCRIPTION | QUANTITY | STORAGE LOCATION | ACTION # |
| | | | | |

**Description of Activity:**

True Party of Interest Violation – WAC 314-55-035. Hidden ownership and or un-vetted investors/financiers of Green Acre Pharms/SMRB in Anacortes WA. Green Acre Pharms / SMRB will hereinafter be referred to as "GAP" and or SMRB.

**Synopsis:**

In September 2018 I was assigned a true party of interest violation case which involves GAP, License # 413099 a Tier 2 marijuana producer/processor operating under UBI 603-350-333. The case alleges hidden owners in the California area that have invested ▓▓▓▓▓▓ each into GAP. A financial records request was issued to Licensee Sonja RUSSELL on November 9, 2018. RUSSELL was to produce records on or before November 27, 2018. 11/26/2018 Attorney for Green Acre Pharms called requesting one month extension. A two week extension (12/19/2018) was granted followed by another two week extension to 12/28/2018. Partial records were produced 12/29/2018.

A review of the records revealed infusion of funds into GAP/SMRB from accounts labeled as Ocean, OCN, and Oceanside. Oceanside Property II is another business owned by GAP licensees. It also appears that in July 2017 during an operation plan change funds were infused from Oceanside Properties and not from GAP business account (Timberland) as provided by licensees in the report of application. This is a misrepresentation of fact WAC 314-55-050(3) and a true party of interest violation, WAC 314-55-035(5), for un-vetted funds. Both violations would result in cancellation of license for first offense.  Additional accounts found in the "detailed ledger" provided by GAP include personal account, and BOA. Details of these accounts to included Oceanside Property were requested during a phone conference on 2/1/2019 but were never produced. This is a violation of WAC 314-55-050(2), refusal or failure to submit documents, and could result in cancellation of license.

On 2/1/2019 a phone conference was conducted between GAP licensee Sonja RUSSELL, their attorney Robert McVay and I. During this interview question were asked that need clarification and/or supporting documents from ledger. I also provided a redacted copy of a purchase and share interest agreement which indicates that a person invested money into GAP for partial business ownership and profit sharing. This document was signed by Robert RUSSELL and Guy GRIFFITHE. I was advised by Mr. McVay that he would confer with his client and respond to questions generated in the interview by next week (2/8/2019). On 2/12/2019 an email was sent to Mr. McVay requesting update. As of 3/1/2019 no response has been given by Mr. McVay or GAP licensees.

An email was sent to Mr. McVay on 3/7/2019 stating the investigation had been completed and as a result AVN's would be issued to GAP. Mr. McVay sent return email and called me. Mr. McVay requested additional time to respond to records request on 2/1/2019. Mr. McVay was given a time tine of March 21, 2019 to provide records and or response to questions asked in phone interview. On March 21, 2019 an email was received with

2

insufficient records that were requested. The records only account for about four (4) individual transaction.

Furthermore a number of "Purchase of Shares Interest" agreements have been obtained which involve the selling of SMRB stock to individual investors. These agreements have been signed by Robert RUSSELL and Guy GRIFFITHE. This is a violation of WAC 314-55-035(1), true party of interest, and could result in cancellation of license.

All supporting documents will be included in this case file under – Attachment "A"

Due to the volume of information in the detailed ledge and other bank records those documents will be available electronically and stored in the "P" drive.

All times listed below will be approximate.

**Narrative/Statements:**

1.  In September 2018 I was assigned this case investigation which alleges true party of interest violations – WAC 314-55-035. I spoke with the originating Officer, Officer Dan Turner to get additional information. Officer Turner advised that person(s) from the California area have identified themselves as "hidden owners / investors" of GAP/SMRB. Officer Turner provided me with contact information for two persons.

2.  On September 10, 2018 I talked with a subject who wanted to remain anonymous. The person will be referred to from hereinafter as SOI-1. SOI-1 stated that in 2015 he/she invested ▓FinInfo▓ in GAP/ SMRB. ▓FinInfo▓ by check the remaining was in cash. SOI-1 was to receive 3.5% ownership of GAP/SMRB. Proceeds of the business were to be distributed quarterly. SOI-1 motivation for contacting WSLCB is that he/she has not received <u>any</u> return on investment. SOI-1 states that he/she has made numerous attempts to contact GAP/SMRB and licensee with negative results. INVESTIGATIVE NOTE: While SOI-1, 2 and 3 wished to remain anonymous, I have spoken with SOI-1 and SOI-3 on numerous occasions and corroborated their information, their names and contact information are readily available if needed.

3.  On September 25, 2018 I received a copy of the "Purchase of Shares Interest Agreement" which outlines the above statements made by SOI-1. The contract was signed by Robert RUSSELL and dated 9/25/2015. I also received a copy of the cancelled check in the amount of ▓FinInfo▓. This contract along with other contracts referred to in this report are all similar. The contracts, in general, state: buyers are purchasing share interest (percentages) of SMRB, which owns GAP in Washington State. Initial investments are paid to Renewable Technologies Solutions, which owns SMRB. A copy of the contract showing a ▓FinInfo▓ investment is attached. Also attached to this case file is ▓FinInfo▓ cancelled check written to Renewable Technologies Solutions as instructed by Robert RUSSSEL. SOI-1 advised the remaining ▓FinInfo▓ was paid in cash at the request of RUSSELL / GRIFFITHE. (A2)

4.  October 30, 2018 I contacted a second person who also wished to remain anonymous at this time. This person will be referred to hereinafter as SOI-2. SOI-2 stated that he/she invested ▓FinInfo▓ into GAP/SMBR in Anacortes, WA. SOI-2 also was to receive quarterly profits from GAP/SMRB. SOI-2 stated that he/she did received some money at first but has not received anything since. SOI-2 was asked if he/she also had a written contract with GAP/SMRB. SOI-2 stated he/she did but it was with his/her attorney. SOI-2 states that he/she was currently in legal proceedings – civil actions with Owners/licensees of GAP and did not know exactly what documents he/she could forward to me. SOI-2 stated he/she would speak with their attorney and if advised it was okay SOI-2 would send me all

3

documents and signed contracts. I have not heard from SOI-2 after that call. No supporting documents with SOI-2 are attached.

5. October 30, 2018 I received a call from a third person who will be referred to as SOI-3. SOI-3 called about two hours after talking with SOI-2. SOI-3 stated that he/she was called by SOI-2 and given my number. SOI-3 stated that he/she invested ▮▮▮▮▮▮ in GAP/SMRB for a 1.5% share of the company. SOI-3 did receive a small amount of profits the first quarter he/she invested but nothing after that. SOI-3 is also in legal proceedings. (A3)

6. Over the next few month SOI-3 and I would talk numerous times. SOI-3 has been actively attempting to get some type of return on investment and would even settle for return of original investment funds. SOI-3 has contacted legal representation and has actively been reaching out to other investors of GAP and Renewable Technologies Solutions.

7. On 11/9/2018 at about 10:49am, I delivered records request to licensee Sonja RUSSELL in the Bellevue area. At this time I advised Sonja RUSSELL of the complaint that generated the records review. I asked Sonja RUSSELL about GAP/SMRB relationship to Guy GRIFFITHE. Sonja RUSSELL stated that Guy GRIFFITHE didn't have anything to do with the business and is not on the license. I then read the authorization to inspect form to Sonja RUSSELL as she was reading along. I read from the records check off list and included asking for any agreements reference property, who owns it or if there is a lease contract. Sonja RUSSELL signed and acknowledged receipt of the request. (A4)

8. On 12/31/2018 some financial records were received electronically. I was also advised by Mr. McVay that additional bank deposit records would follow. The financial records received were limited. A list of documents emailed is attached. (A5)

9. On 1/3/2019 I received a call from SOI-3 who state he/she and other investors were being given a rescission offer that was due 1/15/2019. SOI-3 stated he/she would advise after 1/15/2019 what offer was presented. I then contacted SOI-1 who stated that he/she was also advised they were presented with a rescission offer by 1/15/2019 but as of 1/10/2019 he/she still have not received any return on her/his investment. Robert RUSSELL and Guy GRIFFITHE have also neglected or refused to correspond with SOI-1 since initial investment.

10. 1/24/2019 received a call from SOI-3 who states that he/she and all other investors were not repaid for their investment. There was no rescission offer made to any investors. SOI-3 was told by GAP attorneys that no one could be repaid due to investigation being conducted by WSLCB. They (investors) were advised to discontinue talking with WSLCB investigators as it will only hurt everyone involved. (A6b)

11. 1/30/2019 received a call from SOI-3, stating he/she and other investors received an email from Guy GRIFFITHE that said WSLCB had placed a hold on the GAP license therefore no one was getting paid. SOI-3 states he and other investors are considering legal actions rather civil or criminal. SOI-3 stated he/she was gathering some documents and would forward them to me in the future. (A6b)

12. 1/30/2019 I received an email from Mr. McVay stating additional bank records have been submitted through "dropbox". Also Mr. McVay asked why GAP was unable to renew their license as it appears to have been put in a holding status. This was later addresses on 2/1/2019 during a conference call. I checked with licensing division as did Mr. McVay. The license was not or no longer on a temporary status. GAP license was again valid to 11/2019.

13. 2/1/2019 conference call was conducted between GAP licensee Sonja RUSSELL, Mr. McVay and I. A number of question were asked which needed clarification and or supporting documents. A list of

4

questions that I asked are in attachment "A". After the interview I sent an email to Mr. McVay with a redacted copy of an investor contract which was signed by Robert RUSSELL and Guy GRIFFITHE. This is the contract I read from while on phone conference. Also refer case report titled Interview FCR. As of 3/1/2019 no additional requested documents have been provided. On 2/12/2019 I sent an email to Mr. McVay requesting update to records request and response to questions asked. I have not received any correspondence. (A7) (A10)

14. I also asked about any lease agreements. Master report of application (2014) states that the property is being purchased by licensees for approximately ▉FinInfo▉. Sonja RUSSELL stated she could not remember who they (GAP) are leasing from and could not remember how much was being spent per month for the lease. I then asked RUSSELL how the lease was being paid. While conducting audit I could not find monthly lease payments being made. The profit and loss statement provided by RUSSELL indicated that the lease is about ▉FinInfo▉ per month. This is another question that was to be answered by 2/8/2019. INVESTIGATIVE NOTE: A records check through Skagit County Assessor's office shows that the listed property units were sold 3/3/2014 to MCL enterprises LLC for ▉FinInfo▉, then sold 11/2/2016 to Oceanside Property II for ▉FinInfo▉, then sold again to current owner Stage Stop 6 LLC on 12/6/2016 for ▉FinInfo▉. Stage Stop 6 LLC is where lease/rent payment should be going to. Assuming rent/lease payment of ▉FinInfo▉ per month from 1/2017 to 12/2018, this would equal ▉FinInfo▉ due or paid. The financial records review reveal the only expenditures of rent/lease recorded in ledger are on line #3967 dated 11/1/2017 for ▉FinInfo▉ but was paid by "Oceanside". Line #7716 dated 12/31/2017 for ▉FinInfo▉, which appears to be total amount spent for year 2017. Line #7717 dated 12/1/2018 for ▉FinInfo▉, which appears to be total spent for year 2018. Therefore total expenses/expenditures for rent or lease of the properties is not reflected in the ledger and appears approximately over ▉FinInfo▉ is unaccounted for. (A8) (A9)

15. Refer report titled "Interview report #2" which greater details this phone conference.

16. 2/4/2019 I received a call from SOI-3 who stated he/she recently received an email from Guy GRIFFITHE and attorneys for GAP. INVESTIGATIVE NOTE: This is a different law firm then Mr. McVay. I was advised that the email in substance stated that the WSLCB investigation is interfering with repayment to investors, therefore stop talking with WSLCB.

17. 2/7/2019 I received another call from SOI-3. SOI-3 stated he/she received a call the previous night from Robert RUSSELL. SOI-3 has only spoken with Robert RUSSELL one time in previous two plus years. Robert RUSSELL told SOI-3 to stop talking to WSLCB or he/she will not get his money nor would others invested in GAP.

18. 2/12/2019 I sent an email to Mr. McVay requesting an update to our interview on 2/1/2019. I have not talked with or corresponded with Mr. McVay since 2/1/2019. I have not received any requested document or records. (A10)

19. INVESTIGATIVE NOTE: Operational change and report of application in 2017 both state that GAP was acquiring units 101 and 102 for expansion. Cost of this operational change was estimated at ▉FinInfo▉ and the stated source of funds was from GAP account (Timberland Bank). Emails obtained from Oracle database shows invoices (and photos) for about ▉FinInfo▉, mostly electrical and HVAC services. While conducting financial audit/records review I only found about ▉FinInfo▉ in payments made to contractors. Services for this build-out were obviously paid out of a different account. I placed a call to All Systems Electric and spoke with a person identified as Rob. I asked if the work conducted at GAP had been paid for and I was advised it was. I asked if the check for services was from Timberland bank. Rob stated he could not remember. I asked if he thought it could have been paid for through Bank of America or through an account called "Oceanside". Rob stated that Oceanside sounded familiar and

6

further stated "is Oceanside that Florida business owned by the same people". I told Rob that was correct, Oceanside was a Florida LLC but owned by Robert and Sonja RUSSELL. Rob stated he would check with his bank and see if he could get a copy of the cancelled check. I also made a call to Service Max for the HVAC install system. I spoke with "Mike". Mike stated he did not remember how the invoice was paid but did state he was paid for his services. Mike stated he would also check with his bank and look at records to see if he could find the cancelled check. INVESTIGATIVE NOTE, as banks/financial institutes typically charge money for this service it is likely I may not receive the requested documents. (A11)

- On 2/28/2019 I received a call from "Rob" at All Systems Electric. He advised his bank researched cancelled checks of his account to match with invoice dates and amounts that I had provided to him previously. Invoice dated 4/14/2107 for ███████ was paid by Oceanside property, Invoice dated 5/5/2017 for ███████ was paid by Oceanside Property, invoice dated 4/21/2017 for ███████ was paid for by Oceanside Property, and invoice dated 4/29/2017 for ███████ was paid for by Oceanside Property.

20. Contained in attachment "A" are purchase and share interest agreements from individuals to include SOI-1 and SOI-3. The other contracts were obtained through civil court records. Also in attachment "A" is literature from GAP/SMRB to potential investors. A number of the claims in the literature, brochures, and emails to investors are false to include: GAP/SMRB stating they have purchased marijuana processing machine (used for oil extraction etc.) for ███████ which resulted in no monies being distributed to investors. GAP is currently producing only, no processing equipment exists at their business. Having a facility with 100,000 square feet of marijuana producing area. This is false as GAP is a Tier 2 licensed facility which only allows for a maximum at 10,000 square feet. (A6)

21. The attached contracts are relatively the same in which they (investors) are to make payment to Renewable Technologies Solutions LLC who owns SMRB in Washington State. The contracts and literature clearly indicates that money invested will go or has gone to GAP/SMRB in Anacortes WA. The fact that the investors have not received any or partial return on investment has generated the complaints from investors particularly SOI-1 and SOI-3. (A6b)

22. SOI-3 has received checks for quarterly distribution which are also attached. These cancelled checks are signed by Guy GRIFFITHE from GAP LLC but have an address in Corona California. While the address on these checks is in California the contracts and literature clearly indicate that investments were made to GAP/SMRB. Two (2) of the checks received are from Renewable Technologies Solutions. This is described in the SOI-3 contract under section 9b, profits from SMRB LLC, AKA GAP will be issued to Renewable Technologies Solutions then allocated to its Ownership Interest holders based on percentage of interest. SOI-3 initial investment to GAP/SMRB was ███████ for a 1% shareholder interest on or about May 24th 2016. And on or about June 21, 2016 SOI-3 provided and additional investment of ███████ in document titled "Personal Guarantee Agreement Addendum. In this agreement it states total capital invested is ███████ for 1.5% interest ownership. The purchase and shares agreement is signed by Robert RUSSELL and Guy GRIFFITHE. The addendum is signed by Guy GRIFFITHE. (A3)

23. SOI-2 invested ███████ into GAP/SMRB for a 1% shareholder interest. SOI-2 has received one return on investment payment of ███████. SOI-2 has not provided any supporting documents. SOI-2 stated that he/she is currently pursuing legal action against SMRB/GAP. SOI-2 stated he/she would send me supporting documents unless advised otherwise be their attorney. I have not spoken with SOI-2 since 10/30/2018 and it would be a fair to assume that SOI-2 attorney has suggested SOI-2 not release the documents.

24. SOI-1 invested ▮FinInfo▮ in 2015 for a 3% shareholder interest. A redacted copy of the contract and cancelled check is attached. SOI-1 is seeking legal representation for civil action but cannot currently afford to pursue at this time. To my knowledge SOI-1 has not received any funds or monies from SMRB/GAP or Renewable Technologies Solutions. (A2)

25. Additional contracts and rescission agreements are from public court records in San Diego California (Kramer) (Acosta-Meza), San Bernardino County (Joseph), and Skagit County Superior court (Bagot). The Skagit County court case is 18-2-00544-29 Steven BAGOT vs GAP, Renewable Technologies Solutions, Robert RUSSELL and Guy GRIFFITHE. The case was dismissed but refiled 1/2019 in King County Superior court #19-2-00772-9 SEA.

26. On or about 10/10/2017 Steven BAGOT invested ▮FinInfo▮ in SMRB D.B.A. Green Acres Pharms. Attached to the court records is a promissory note from borrowers Robert RUSSELL and Guy GRIFFITHE. Another attachment is a letter of understanding dated 11/24/2017 where Mr. BAGOT intended on investing an additional ▮FinInfo▮ into Renewable Technologies Solution for a 2% ownership of GAP/SMRB, this is to help cover the cost and operation of the cryogenic oil machine (which GAP does not actually have). (A12)

27. On or about June 20th 2016 Jason Joseph invested ▮FinInfo▮ into Renewable Technologies Solutions for .50% ownership of SMRB. Also on this date Jonathan and Becky Joseph invest ▮FinInfo▮ in Renewable Technologies Solutions for 1% ownership interest of SMRB (Owned by RTSI). Both of these contracts are signed by Robert RUSSELL and Guy GRIFFITHE. Again on this date Steven Kramer invested ▮FinInfo▮ in Renewable Technologies Solutions for .50% ownership interest of SMRB. (A13) (A14) (A15)

28. On or about May 11th 2016 Amebro Logistics/Geovanny Francisco Acosta Meza Diaz also invested in Renewable Technologies Solutions. They invested ▮FinInfo▮ for .50% ownership of SMRB. This contract names both Robert RUSSELL and Guy GRIFFITHE as "seller's" but the contract is only signed by Guy GRIFFITHE. (A16)

29. While the numerous provided purchase of share interest agreements in this case file show investments to SMRB / GAP of over ▮FinInfo▮ there are additional investors that do not want to be involved in this investigation as they fear they will never receive any return on their investment. I have reached out to some of those person but at the time of this report there has been no return correspondence. During financial records review of GAP/SMRB I could not directly find the infusion of these funds. The records review does clearly show that GAP/SMRB uses other accounts to infuse funds and or pay expenditures through other accounts not vetted by WSLCB. The cash deposits of the ledger cannot be verified as no supporting documents for those deposits have been received. And it is likely they never will be provided.

30. SMRB/Green Acre Pharms the marijuana producer/processor business is licensed to Robert and Sonja RUSSELL. There is, recorded in Department of Revenue and Secretary of State, a SMRB and GAP business in which the licensees are Guy GRIFFITHE and Robert RUSSELL. Secretary of State also list Renewable Technologies Solutions principal office address as: 9642 Padilla Heights Road, Anacortes, WA 98821. This is the same the address as GAP the Washington licensed marijuana producer/processor. The UBI for Renewable Technologies Solutions is 604-093-784 and lists Guy GRIFFITHE and Robert RUSSELL as governing persons. (A17) And as previously noted GAP/SMRB investors were directed to make initial investment payable to Renewable Technologies Solutions. Funds would then be invested into GAP in Anacortes, WA.

31. On March 7, 2019 at 11:42 am I sent an email to Mr. McVay that I had concluded the investigation and

1

I would be issuing AVN's as a result of my findings. At 12:02pm I received a return email and later a phone call from Mr. McVay essentially requesting additional time to provide requested documents. Mr. McVay stated he thought he had sent an email earlier requesting to talk. I advised Mr. McVay that I had not received the email or other correspondence. Mr. McVay stated that he had spoken with Robert and Sonja RUSSELL reference the redacted shares agreement I had sent. Mr. McVay stated Robert and Sonja said the signatures were "fake". I advised Mr. McVay that I had six (6) contracts and additional supporting documents. Mr. McVay stated that he was confident that there was no true party of interest violations involving other investors. Mr. McVay did state that as far as money from other accounts wholly owned by Robert and Sonja RUSSELL being infused in the business, "Yeah that probably happened", it is common in this business. We discussed that those accounts needed to be vetted and I again requested records specifically for Oceanside account as I know it to have been used frequently. Mr. McVay said he would try to get those records. A date of March 21, 2019 was given to provide all requested documents.

32. On March 21, 2019 I received an email from Mr. McVay with included attachments. In this email Robert and Sonja again claim redacted contract is a forgery. The email notes that Oceanside is wholly-owned by Robert and Sonja RUSSELL and two (2) bank records were attached. One of the attachments is for First Tech Federal Credit Union account ending in ████ with a statement date of 2/28/2018 this statement is in response to an interview questions as where the ███████ came from and why. The account name is Oceanside II Property Investments LLC. The provided bank statement shows a deposit on 2/26/2018 for ███████ and a debit on 2/27/2018 for ███████ (Over the counter check 150 Brain Allen Martin). Emerald City Cultivation licensee is named Brain Martin. This is not full disclosure of where this ███████ originated from for an apparent marijuana transaction. All deposits in Oceanside are from a single account ending in number ████. ███████ in deposits, ███████ in withdrawals. This is a pass-through account and monies infused into GAP/SMRB cannot and are not vetted. (A20) (A21). INVESTIGATIVE NOTE: (A21) First Tech Federal Credit Union in the name of Robert RUSSELL ends in account number ████. It would appear that the ███████ used in the marijuana transaction with Emerald City Cultivation came from Robert RUSSELL personal account. In fact, of the bank records provided, all deposited funds into Oceanside II Property Investments account are received from Robert RUSSELL personal account ending in ███████

33. On March 22, 2019 an email was sent to Mr. McVay stating that records provided were insufficient. They only provided limited bank records for Oceanside II property account, no lease agreement and other requests for expenditures, deposits and wire transfers. I would not hear back from Mr. McVay until 4/3/2019

34. On 4/3/2019 at 11:40am, I again sent an email to Mr. McVay concluding the complaint investigation which would result in AVN's being issued assuming that he (Mr. McVay) would be accepting on behalf of SMRB/GAP.

35. 4/3/2019 at 12:38pm I received return email. It was agreed to meet Tuesday 4/9/2019. Also attached to the email was the lease agreement for SMRB/GAP and property owners Stage Stop 6 LLC. INVESTIGATIVE NOTE: I have asked for this agreement since 11/2018 when I first presented Sonja RUSSELL with records request. Also in the email it states "my clients tell me that they have been paying directly on behalf of SMRB". This would explain why no lease/rent transactions could be found in SMRB/GAP ledger. It also appears that lease was not provided early as it clearly shows that well over ███████ of un-vetted funds are infused into the business. (A22)

**Conclusion**

- **Complaint of true party interest WAC 314-55-035(1) is substantiated.** There are eight (8)

attached "purchase of share interest agreements" to this case file. These contracts total over
FinInfo given to Guy GRIFFITHE and Robert RUSSELL for share ownership of
SMRB, DBA as GAP. After reviewing the contracts and speaking with SOI-1 and SOI-3
there is no reason to believe that the investors did not think their money was going to the
producing and or production of marijuana at GAP in Anacortes WA for which they would
have ownership percentages. It also appears they are likely victims of fraud such as a "Ponzi
Scheme" by Guy GRIFFITHE and Robert RUSSELL. Either way, these person's invested
monies in SRMB / GAP, and Robert RUSSELL that was not vetted and was never reported to
WSLCB licensing division. This is a violation of WAC 314-55-035(1) and results in
cancellation of license.

- **True party of interest violation of WAC 314-55-035(5) is substantiated:** Un-vetted funds
  have been infused to GAP through an account identified as "Oceanside Property II". Over
  FinInfo are identified on just three entries of the ledger provided by GAP. This account is
  also identified as being used for lease/rent payments and a Change of Operation plan build-
  out in 2017 for approximately FinInfo . On 4/3/2019 I finally received a copy of the
  property lease agreement (A22). In this agreement SMRB/GAP leases the property they
  previously owned for $36,700 per month from 12/1/2016 to 11/30/2017 for a total of
  $440,000.00. From 12/1/2017 to 11/30/2018 lease payment increased to $37,801 per month
  for a total of $453,612.00. Lease agreement for 12/1/2018 to 11/30/2019 is $38,935.00 per
  month. 12/1/2018 to present 3/31/2019 would total $155,740.00. Lease payment for the
  property totals $1,049,752.00 and with the security deposit of FinInfo the new total
  would be FinInfo which, per Mr. McVay is being paid by Robert and Sonja RUSSELL
  directly on behalf of SMRB/GAP. Licensees Robert and Sonja have infused at least
  FinInfo of un-vetted funds into SMRB/GAP. This violation could result in cancellation
  of license.

- **Misrepresentation of facts violation of WAC 314-55-050(3) is substantiated:** Licensees
  declare in a 2017 Change of Operation Plan that a build-out expense of approximately
  FinInfo source of funds will be from Green Acre Pharms / SMRB Timberland account.
  A financial records review could only find about FinInfo of the build-out expense recorded
  in the ledger. Follow-up inquires to one of the contractors revealed that at least FinInfo of
  the work completed at GAP/SMRB was paid by Oceanside Property by check. This violation
  results in cancellation of license. I also found that in the original "Master Report of
  Application", "Source of Funds" statement, and "License Initial Investigator Notes", for start-
  up costs and build-out costs all state the funds are from licensee other business "By Design
  Rockeries & Excavation". A check with Skagit County Planning and Building Services
  shows that building permits were obtained by "Oceanside Property". On 3/4/2019 I placed a
  call to Skagit County Planning and Building Services. I asked about one of the permits I had
  found, BP15-0093. I was advised that partial payment was made by person last name of
  Taylor (this is the land owner) and all remaining fees were paid by check – Oceanside
  Property. I have attached a few pages of this 101 page building permit document. The
  remaining pages not in this case file are contained electronically. (A18) (A19)

- **Failure or refusal to submit violation of WAC 314-55-050(2) is substantiated:**
Authorization to inspect form was delivered to licensee Sonja RUSSELL on November 9, 2018. This form details required documents and records need to conclude the investigation. Original date for records to be submitted to WSLCB was 11/27/2018 and two extensions were granted after that. Partial documents were delivered through "Dropbox" by attorney Robert McVay. A phone conference was held on 2/1/2019 where several other documents, records and or supporting document were requested. It was agreed that these would be delivered and or answered by 2/8/2019. On 2/12/2019 an email was sent to representing attorney Mr. McVay requesting an update. No response was received until advising Mr. McVay that AVN's would be issued. On March 21, 2019 Mr. McVay sent limited records that were requested on behalf of GAP. The Oceanside II property account only had two monthly bank records attached (2/2018 and 8/2017). As previously noted this account has been used to infuse money in GAP since before and after licensure. Lease agreement provided but not until 4/3/2019 when SMRB/GAP was advised that Administrative Violation Notices were being issued.

"I certify or (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge."

CITY: Yakima        SIGNATURE:    *Gary Wilcox*        DATE:  4/4/2019

| OFFICER NAME<br>Gary Wilcox | NUMBER<br>137 | AREA<br>5Q | Supervisor approval:<br><br>APPROVED | SUPERVISOR<br><br>LT. Lee Slemp |
|---|---|---|---|---|

10

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

Heidi Urness
WSBA No. 53165
Heidi Urness Law, PLLC
725 E. Denny
Seattle, WA 98122

*Attorney for Plaintiff*

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** SANTA ANA DIVISION

In re:

Guy S. Griffithe,

Debtor(s).

CASE NO.:  8:19-bk-12480-TA

CHAPTER: 7

ADVERSARY NO.:

Steven Bagot,

Plaintiff(s)

Versus

Guy Griffithe,

Defendant(s)

**SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING**
**[LBR 7004-1]**

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____ | Address: |
| Time: _____ | ☐ 255 East Temple Street, Los Angeles, CA 90012 |
| Courtroom: _____ | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☒ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |
| | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                         Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                    Page 2                          **F 7004-1.SUMMONS.ADV.PROC**





ORIGIN ID:LKEA  (360) 727-1547
HEIDI URNESS
725 E DENNY WAY APT 204

SEATTLE, WA 98122
UNITED STATES US

TO  ATTN:CLERKS OFFICE
    US BANKRUPTCY CT CENTRAL DIST OF CA
    411 W FOURTH ST
    SUITE 2030
    SANTA ANA CA 92701

SHIP DATE: 02OCT19
ACTWGT: 0.40 LB
CAD: 6991602/SSF02021

BILL CREDIT CARD

TRK#  7801 6632 6949
0201

WZ APVA

THU — 03 OCT 3:00P
STANDARD OVERNIGHT

92701
CA-US  SNA

ASR



B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

**RECEIVED**
**OCT - 3 2019**
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Steven Bagot | Guy S. Griffithe |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| Heidi Urness Law, PLLC<br>725 E. Denny Way # 204<br>Seattle, WA 98122<br>360.727.1547 | Bert Briones<br>Red Hill Law Group<br>15615 Alton Parkway, Suite 210<br>Irvine, CA 92618 |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The debtor in this action, Guy S. Griffithe, is not entitled to receive a discharge of debts pursuant to 11 USC Section 727(a), or the debt is excepted from discharge under 11 U.S.C. Section 523(a). The relevant nonbankruptcy action to which the debtor Griffithe is a Defendant alleges causes of action against him for fraud, negligent misrepresentation, civil conspiracy, breach of contract, unjust enrichment, conversion, promissory estoppel, breach of the fiduciary duties, breach of the duties of good faith and fair dealing, violations of Washington's LLC disclosure requirements and Washington securities laws.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☑ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Guy S. Griffithe | BANKRUPTCY CASE NO.<br>8:19-bk-12480-TA | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District, California | DIVISION OFFICE<br>Santa Ana, CA | NAME OF JUDGE<br>Albert, T. C. |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>Joseph Samec | DEFENDANT<br>Guy S. Griffithe | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central District, California | DIVISION OFFICE<br>Santa Ana, CA | NAME OF JUDGE<br>Albert, T. C. |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Hmess* | | |
| DATE<br>10/01/19 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Heidi Urness | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.